Jolene C. BRUCKS, Plaintiff,

v.

Paul H. O'NEILL, Secretary of the Treasury, Defendant.

No. CIV.A. 00–2163–CM.

United States District Court, D. Kansas.

Nov. 21, 2001.

Jerry K. Levy, Law Offices of Jerry K. Levy, Katherine L. Kirk, Attorney Mediator, Lawrence, KS, for Plaintiff.

Jolene C. Brucks, Cape Coral, FL, Pro se.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

In this lawsuit, plaintiff Jolene Brucks, a revenue agent employed by the Internal Revenue Service ("IRS"), alleges that the defendant IRS discriminated against her by failing to promote her, retaliating against her, and maintaining a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994) et seq. Pending before the court is defendant's motion for summary judgment (Doc. 63). For the reasons set forth below, defendant's motion is granted and plaintiff's complaint is dismissed.

### I. Facts[1]

### A. The Grade 12 Promotion Decision

### 1. The Selection Process

Plaintiff has been employed as a Grade 11 revenue agent with the IRS since February 1986 and served in the Parsons, Kansas office from 1994 to 1999. In 1998, plaintiff applied for a position as a Grade 12 revenue agent in the Parsons office. Of the five Grade 11 employees who applied, she received the highest Best Qualified List (BQL) score. The BQL score is based on a formula derived from factors relevant to the open position. The BQL score does not determine the individual to be selected for the position. Rather, it serves as a means to narrow the number of applicants to those persons best qualified for the position. Every applicant listed on the BQL who was interviewed had an equal opportunity to be selected for the promotion. After the BQL scores were tabulated, the top four candidates were two men and two women (including plaintiff). The second female candidate subsequently withdrew her name from consideration. Although interviews were not required as part of the selection process, Luther Clary, the Branch Chief, and Juan Luina, the Group Manager from the Topeka, Kansas office, interviewed the remaining candidates. Plaintiff and Lorn Burdick, a man, became the top two candidates. Ultimately, Mr. Clary and Mr. Luina selected Mr. Burdick for the promotion.

Defendant contends that Mr. Burdick received the promotion because he was the most qualified candidate. It claims Burdick had more relevant experience, better interpersonal and communication skills, and performed better during the interview than plaintiff. Plaintiff, on the other hand, asserts that the reasons set forth by defendant are pretextual, and that the decision was gender-based.

The interview panel arrived at its decision by comparing the information provided by each applicant, including background, education, experience, and interpersonal and analytical skills as demonstrated in the interviews. The interviewers did not receive guidelines from the agency regarding how to evaluate the candidates. Mr. Clary and Mr. Luina determined that Mr. Burdick had more experience in a wider variety of areas than did plaintiff, which would enable him to be more successful as a Grade 12 revenue agent.

Among Mr. Clary and Mr. Luina's observations during the interviews were that while Mr. Burdick appeared comfortable and at ease, plaintiff had appeared nervous

---

1. In accordance with the applicable summary judgment standard, the facts are uncontro- verted or are viewed in the light most favorable to plaintiff. Fed.R.Civ.P. 56.

and was argumentative in response to one question. Further, Mr. Burdick had been a Revenue Agent for twenty-four years, whereas plaintiff had twelve years of experience. In addition, Mr. Burdick had served as a Volunteer Income Tax Assistance coordinator and instructor, was a Lieutenant Colonel in the United States Army Reserve, and had completed credits toward an MBA. Plaintiff, on the other hand, was a Certified Public Accountant and a licensed mediator. She also received national recognition for her work on a complex tax case. Both candidates had experience on higher graded duty cases.

With respect to his evaluation of the candidates' qualifications, Mr. Luina stated that Mr. Burdick's twenty years of experience and education guided him to choose Mr. Burdick over plaintiff. Mr. Clary stated that the determining factors in his decision were Mr. Burdick's slightly greater experience, community involvement, and education. Mr. Clary also stated he was impressed with Mr. Burdick's military record. Mr. Clary opined that the national recognition plaintiff had achieved for her work on one case did not outweigh Mr. Burdick's extensive training, knowledge, experience, and interpersonal skills demonstrated during the interview process. Before she became aware of the BQL ranking, plaintiff stated she would have understood if Mr. Burdick were selected for the Grade 12 promotion, because he had more years of experience than she. In their respective positions, Mr. Clary and Mr. Luina routinely encouraged female employees to seek better, higher-paying positions, and promoted female employees whenever possible and appropriate.

### 2. Plaintiff Contacts Steven Sumler

On June 4, 1998, plaintiff learned that Mr. Burdick had received the promotion. She contacted Steven Sumler, an Equal Employment Opportunity (EEO) Specialist located in the St. Louis IRS office, and expressed a desire to file an EEO complaint. Plaintiff stated that she believed Mr. Sumler was an EEO counselor, and that Mr. Sumler did not correct her misunderstanding. She contends he did not assign her an EEO counselor or refer her to the proper party with whom to file a complaint. Mr. Sumler was, however, aware of an EEO counselor's duties because he had served as a counselor in the past. Mr. Sumler stated that he did not assign a counselor to the case because plaintiff later told him she did not want to initiate the EEO process. He said plaintiff initially told him she wanted to file a complaint, but changed her mind, and said she did not want to file a complaint because she liked Luther Clary.

Mr. Sumler stated that plaintiff was merely calling him to hear an empathetic person, and denies that he misled or intimidated her. Plaintiff admits that she was aware of the time limits for contacting an EEO officer and that Sumler did not deceive her regarding them. Plaintiff, however, contends that Mr. Sumler misled her as to his status as an EEO counselor and intimidated her from filing a timely EEO complaint. Plaintiff stated that Mr. Sumler often referred to God and Christ as proper avenues with which to deal with her complaint. According to plaintiff, Mr. Sumler became "authoritarian" and informed her that "[m]anagement takes this [allegation of discrimination] very seriously." Plaintiff continued to speak with Mr. Sumler by telephone for the next ten months, including after plaintiff took a hardship transfer to Florida in September 1999. Plaintiff does not allege that anyone within the agency precluded her from contacting another EEO counselor if she had been dissatisfied with Mr. Sumler. She also admits she believes herself to be skilled at legal research. Plaintiff had received information on discrimination, retal-

iation, and the means by which to contact an EEO counselor if she believed herself to be the victim of sex discrimination and retaliation.

## B. Plaintiff's Internal Grievance

### 1. Plaintiff's Higher Graded Duty Pay Request

The IRS designates cases according to a grade level based upon their complexity and the dollar amounts involved. Art Klaus, the Group Manager for the Parsons office, generally assigned revenue agents to cases commensurate with the grade level of their positions. Pursuant to their collective bargaining agreement with the agency, revenue agents were not entitled to receive pay at a higher grade than that which relates to the grade level of their positions. Mr. Klaus secured a temporary promotion to Grade 12 for plaintiff while she worked on a Grade 12 case in 1997 and 1998, even though she did not request a pay increase. Mr. Klaus stated that at that time, plaintiff promised Mr. Klaus she would not request higher graded pay if he would permit her to continue working on the Grade 12 case. Plaintiff denies making such a promise.

On August 20, 1998, plaintiff submitted a request for Grade 13 pay. On September 2, 1998, Mr. Klaus met with plaintiff to discuss her request. Mr. Klaus was angry because he claimed plaintiff had promised she would not seek higher graded duty pay in exchange for Mr. Klaus's promise he would assist her in obtaining a temporary certification to Grade 12. After hearing plaintiff's request, Mr. Klaus stated he would give plaintiff the "easiest Grade 11 cases to work."

### 2. Plaintiff Files an Internal Grievance

On September 22, 1998, plaintiff filed a formal grievance in which she sought to obtain back pay for higher graded pay at Grade 13 for work she had performed as a Grade 11 Revenue Agent. In her grievance, she also alleged that Mr. Klaus's statement that he would assign her the lowest possible Grade 11 work assignments was in retaliation for her formal request for higher graded duty pay. Citing an ongoing pattern of discrimination, harassment, and hostility in her grievance, plaintiff asked that the alleged retaliation cease and that Mr. Klaus assign work fairly.

Specifically, she declared that Mr. Klaus retaliated against her for the higher graded duty request by permitting Bob Lett and Lorn Burdick, other co-workers who were Grade 12 employees at that time, to select their own cases. Neither her pay request nor her grievance addressed retaliation or discrimination under Title VII. Mr. Klaus denied that he had retaliated against plaintiff for exercising her EEO rights. According to Mr. Klaus, plaintiff had not been omitted from the selection of cases for retaliatory reasons. Rather, he claimed that all of the cases at issue were Grade 12 cases upon which plaintiff was not entitled to work because she was not a Grade 12 agent. Although plaintiff has no documentation that the alleged inequitable work assignment process took place, she states that Mr. Klaus sent her cases that were out of the audit cycle and therefore less challenging. Plaintiff settled her grievance on August 30, 1999, pursuant to an agreement she signed with Mr. Klaus and Ross Hirst, the Union Steward.

In her internal grievance filed with the National Treasury Employees Union, plaintiff sought "[r]elief from retaliation for requesting higher graded duty pay," [f]reedom from reprisal for filing this grievance and pursuing my rights for higher graded duty pay, that "management at all levels ... treat [her] with ... dignity and respect," that case assignments be "consistent with the difficulty of cases as-

signed to other GS–11 revenue agents in Group 1550 and the KS–MO District," and that she receive "[o]pportunity for development through casework which will enable [her] to be competitive for promotions with other GS–11 revenue agents."

A subsequent memorandum from Mr. Klaus signed on November 24, 1998 stated that he would "make every attempt to provide the grievant more challenging work assignments commensurate with the complexity of those cases given to other examiners at her current grade level and consonant with mission and program needs." Moreover, he apologized "for the events surrounding the grievant's most recent case assignments," and stated he was "firmly committed to ensuring that the grievant and all employees are treated with fairness, equity and respect and are not subject to retaliation or reprisal for exercising any employee rights." In the settlement agreement executed by the plaintiff, Mr. Klaus, and Mr. Hirst, the plaintiff was awarded back pay, interest, and a temporary promotion for the period in question.

### 3. Plaintiff's EEO Complaint

Plaintiff contacted EEO Counselor Sondra Tuck on May 25, 1999. In May 1999, plaintiff requested a hardship transfer to an IRS office in Florida due to her allergies. Her request was granted in June 1999, after which Mr. Klaus took away the inventory of cases assigned to plaintiff. Plaintiff filed her only EEO complaint on September 16, 1999, alleging she had been subjected to gender-based discrimination because she was excluded from office activities, ridiculed and humiliated, did not receive the same information as others similarly placed in the office, was passed over for promotion, and had not been given work she had proven she was capable of doing. On November 4, 1999 the Department of the Treasury, Regional Complaint Center notified plaintiff in writing that

many of her claims of sex discrimination and retaliation appeared to be time-barred because she had failed to contact an EEO counselor within forty-five days of the described events. Plaintiff responded with a letter on December 1, 1999, claiming that she did not receive the Grade 12 promotion because Mr. Clary and Mr. Luina had discriminated against her, and that the St. Louis EEO office had advised her not to file a discrimination complaint.

The Department of Treasury, Regional Complaint Center dismissed plaintiff's failure to promote claim on January 10, 2000 because plaintiff did not contact an EEO counselor and initiate informal counseling within forty-five days of learning of the decision to promote Burdick. Although plaintiff's complaint stemmed from events that occurred between 1994 and March 24, 1999, she did not seek EEO counseling until May 25, 1999, which was more than forty-five days from the dates of the purported incidents.

### II. Motion for Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if

"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant who bears the burden of persuasion at trial must support its motion with evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting);[2] *Anderson v. Dep't of Health and Human Servs.*, 907 F.2d 936, 947 (10th Cir.1990). In contrast, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim. Rather, the movant need simply point out to the court a lack of evidence from the nonmoving party on an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; accord *Adler*, 144 F.3d at 671 n. 1. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, it must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to

affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court will analyze each of plaintiff's claims in turn.

## III. The Grade 12 Promotion Decision

Plaintiff claims that defendant failed to award her a promotion for which she was the most qualified candidate because the decisionmakers discriminated against her on the basis of sex. Defendant maintains that it is entitled to summary judgment on plaintiff's failure to promote claim because she failed to exhaust administrative remedies as required by 29 C.F.R. § 1614.105. In the alternative, defendant maintains that it chose Mr. Burdick for the promotion based on legitimate, nondiscriminatory factors, and that plaintiff has made an inadequate showing of pretext. For the reasons set forth below, the court grants summary judgment in favor of defendant on this claim.

## A. Initiation of EEO Contact

A plaintiff must exhaust administrative remedies prior to filing suit under Title VII. *Jones v. Runyon*, 91 F.3d 1398, 1399–1401 (10th Cir.1996).[3] Federal employees who believe they have been discriminated against on the basis of sex must consult an EEO counselor "within forty-five days of the date of the matter alleged to be dis-

---

**2.** Justice Brennan agreed with the majority's analysis of Rule 56. He dissented, however, because he believed that the majority had not adequately explained what is required of the moving party that does not bear the burden of persuasion at trial. *Celotex*, 477 U.S. at 329–31, 106 S.Ct. 2548.

**3.** Compliance with precomplaint process is jurisdictional in nature in the Tenth Circuit. *Welsh v. City of Shawnee*, 182 F.3d 934, 1999 WL 345597, at *1 n. 2, (10th Cir.1999) (Table, text in Westlaw); *Jones*, 91 F.3d at 1399 n. 1.

criminatory or, in the case of personnel action, within forty-five days of the effective date of the action." 29 C.F.R § 1614.105 (2001). This enables the EEOC to investigate and conciliate the claims and places the employer on notice of the allegations. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997).[4]

■ The court must determine whether plaintiff sufficiently initiated EEO contact within forty-five days of the events of which she complains: the failure to promote decision and the time the alleged retaliation began. If plaintiff did not initiate contact in a timely fashion, the court must examine whether equitable tolling is appropriate.[5] In doing so, the court defers to the EEOC's interpretation of its own regulations unless they are plainly erroneous or inconsistent with the regulation at issue. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (citations omitted); see also *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 117, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (stating that the EEOC's interpretations of Title VII "need only be reasonable to be entitled to deference").

The EEOC has held that to sufficiently initiate contact within the meaning of 29 C.F.R. § 1614.105, the employee must "(1) contact an agency official logically connected with the EEO process, even if the official is not an EEO counselor; (2) demonstrate an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination." *Johnson v. Glickman*, 155 F.Supp.2d 1240, 1247 (D.Kan.2001) (citing *Pauling v. Sec'y*

*of Dep't of Interior*, 960 F.Supp. 793, 803 (S.D.N.Y.1997)).

On June 4, 1998, plaintiff learned that Lorn Burdick had been selected for the Grade 12 promotion for which she had also interviewed. After that date, she contacted Mr. Sumler, whom she believed was an EEO counselor, with a desire to file a complaint. Plaintiff later told Sumler she did not want to file an EEO complaint in regard to her nonpromotion claim because she liked Luther Clary, the Branch Chief who had participated in the interview panel. As a result, she did not meet the second or third elements of the test for initiation of contact with an EEO official in order to file a timely complaint within the meaning of 29 C.F.R. § 1614.105. Plaintiff did not express a desire to move forward with a complaint of sex discrimination until May 25, 1999, when she contacted EEO Counselor Sondra Tuck. She filed her EEO complaint on September 16, 1999. The court finds plaintiff clearly exceeded the forty-five-day time limits for notifying EEO officials of intent to begin the complaint process established by 29 C.F.R. § 1614.105. Thus, the claim may be regarded as timely only if equitable tolling is appropriate.

**B. Equitable Tolling**

**1. The Applicable Standard**

In the Tenth Circuit, equitable tolling of the time limitations under Title VII is permitted "*only* if there has been 'active deception' of the claimant regarding procedural prerequisites." *Scheerer v. Rose State Coll.*, 950 F.2d 661, 665 (10th Cir. 1991) (quoting *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1481 (10th Cir.1988)).

---

**4.** The court relies upon this unpublished opinion while acknowledging that the Tenth Circuit Rule 36.3 disfavors citation to unpublished opinions.

**5.** Neither party has argued that a continuing violation within the statutory period precludes a finding that the forty-five day time limit has run; thus, the court does not consider this issue.

The doctrine may apply "where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.'" *Johnson*, 861 F.2d at 1480 (quoting *Carlile v. S. Routt Sch. Dist. RE 3–J*, 652 F.2d 981, 986 (10th Cir.1981)). It also applies if a plaintiff has been " 'actively misled,' or 'has in some extraordinary way been prevented from asserting his or her rights.'" *Johnson*, 861 F.2d at 1480–81 (quoting *Wilkerson v. Siegfried Ins. Agency, Inc.*, 683 F.2d 344, 348 (10th Cir. 1982)).[6] The court must examine whether the facts of this case align with those of cases in which the Tenth Circuit has applied equitable tolling. The Tenth Circuit has invoked the equitable tolling doctrine only in particularly egregious circumstances, such as when a plaintiff's reliance upon statements of a court or agency official or on a confusing right-to-sue letter caused him or her to commit procedural errors in the course of otherwise diligently pursuing a claim. See *Richardson v. Frank*, 975 F.2d 1433 (10th Cir.1991) (excusing federal employee's four-month delay prior to his initial contact with the EEO office because he had been misinformed regarding his appeal rights and had not been informed of the procedures required for bringing a complaint); *Brezovski v. U.S. Postal Serv.*, 905 F.2d 334, 337 (10th Cir.1990) (recognizing tolling when language in a right-to-sue letter misled plaintiff as to the proper party to name as defendant); *Donovan v. Hahner, Foreman & Harness, Inc.*, 736 F.2d 1421, 1427–28 (10th Cir.1984) (upholding the trial court's finding that defendant employer misled plaintiff to believe he had been laid off instead of discharged, thus leading him to miss the statutory time limit and justifying equitable tolling); *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857 (10th Cir.1983) (finding plaintiff's reliance on confusing right-to-sue letter which induced him to file complaint six days late was reasonable under the circumstances, and noting that the plaintiff had pursued the claim diligently); *Carlile v. S. Routt Sch. Dist. RE 3–J*, 652 F.2d 981, 986 (10th Cir.1981) (holding that tolling was appropriate when the plaintiff missed the ninety-day requirement for filing suit due to her reliance on the district court's statements).

In contrast, the Tenth Circuit has held equitable tolling is inappropriate when a plaintiff has not reasonably relied on the statements of a court or agency official. For example, in *Mascheroni v. Board of Regents*, 28 F.3d 1554 (10th Cir.1994), the Tenth Circuit held equitable tolling was inappropriate because the employer did not deceive the plaintiff as to the procedural requirements for filing a Title VII action. *Id.* at 1563. The plaintiff claimed equitable tolling was justified because his employer had encouraged him to exhaust administrative processes and internal grievance mechanisms before filing a complaint and made misrepresentations to him regarding his efforts to revive his security clearance. *Id.* at 1562. The court found this was an insufficient basis for tolling, noting that "[m]erely alleging business reasons or a corporate culture that discouraged him from suing promptly does not state a basis for invoking the equitable tolling doctrine." *Id.* at 1563.

---

**6.** The EEOC's regulation 29 C.F.R. § 1614.105(a)(2) (2001) provides:

The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that the or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the commission.

The Tenth Circuit also declined to apply equitable tolling in *Purrington v. University of Utah*, 996 F.2d 1025 (10th Cir.1993). The plaintiff contended equitable tolling of her Title VII claim was appropriate based on her conversation with the director of the university's Office of Equal Opportunity, who told her that the office was investigating other complaints regarding sexual harassment by the plaintiff's supervisor. *Id.* at 1027. The court refused to apply equitable tolling because Purrington failed to bring her claims within a reasonable time of becoming aware that the university was not investigating her allegation. *Id.* In another decision, the Tenth Circuit affirmed summary judgment against a postal worker who claimed that his mental disability had prevented him from contacting an EEO Counselor within the forty-five day limit, because he did not show how his illness had prevented him from asserting his rights. *Blackwell v. Runyon*, 1997 WL 362267, at *2, 116 F.3d 1489 (10th Cir. 1997) (Table, text in Westlaw).

## 2. Analysis

■ Plaintiff argues that her circumstances warrant equitable tolling of the forty-five day time period in which to initiate the EEO process. She contends that Mr. Sumler prevented her from filing in a timely manner because he deceived her in two ways. First, she alleges that he did not correct her misconception that he was an EEO counselor when in fact he was an EEO specialist. Second, she claims he dissuaded her from filing a complaint because he told her that "management takes this type of claim very seriously"[7] and he talked about religion as a potential means of disposing of the problem. Plaintiff claims that she inferred from Mr. Sumler's "authoritarian" tone an implicit message that she could lose her job or face greater retaliation if she were to pursue a discrimination complaint. Plaintiff later told Mr. Sumler she did not want to file a complaint because she liked Luther Clary, one of the interviewers.

At the same time, plaintiff admits that Mr. Sumler did not deceive her regarding the time limits for contacting an EEO counselor and that she was aware of the time constraints. Plaintiff admits that as an IRS employee, she received information regarding how to contact an EEO counselor if she believed herself to be the victim of sex discrimination and retaliation; in fact, one of her duties was to change the posters picturing EEO officers. However, plaintiff continued to speak with Mr. Sumler for ten months after she first expressed her desire to bring a claim.

The court finds that Mr. Sumler's failure to correct her misconception as to the nature of the position and his statements that plaintiff claims allegedly dissuaded her from filing a complaint do not rise to the degree of "active deception" required for equitable tolling. As a result, plaintiff's failure to promote claim is untimely and must be dismissed. Unlike the cases cited above in which the Tenth Circuit has found equitable tolling to be warranted, here,

---

7. Defendant argues that due to plaintiff's failure to allege in her EEO Complaint filed September 16, 1999 that Sumler had intimidated her from timely filing, she is estopped from raising this argument. The court recognizes that consideration of complaints not expressly included in an EEO charge is appropriate if they could reasonably have been expected to come to light in the course of investigating the charges alleged by the claim-

ant. As such, this argument alone does not justify dismissal of the failure to promote claim. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir.1993) (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 38–39 (1st Cir.1990); *Butts v. City of N.Y. Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993); and *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir.1976)).

Mr. Sumler did not misinform or confuse plaintiff as to the procedural requirements for filing a Title VII claim. Plaintiff was aware of the complaint process, and at no time did Mr. Sumler represent to her that he was proceeding with her claim when he was not doing so.[8]

Moreover, whether Mr. Sumler was an EEO counselor or an EEO specialist is of no consequence because contacting an individual connected with the EEO process suffices to "initiate contact" for purposes of 29 C.F.R. § 1614.105. *Johnson*, 155 F.Supp.2d 1240 (citing *CLEVENGER V. DANZIG*, Appeal No. 01985794, 2000 WL 270449, at *3 (E.E.O.C. Feb. 29, 2000)). In Johnson and Clevenger, contact with an individual who had formerly served as an EEO counselor sufficed as contact with an individual logically connected with the EEO process. 155 F.Supp.2d at 1246.

The court finds that Mr. Sumler's conduct is more like that of the employer in Mascheroni, which held that the existence of a corporate culture that discourages the filing of complaints in Title VII actions, without more, does not justify equitable tolling. Even when drawing all reasonable inferences in favor of the plaintiff as the nonmoving party, the court finds that Mr. Sumler's statements that management would take her claim of gender discrimination seriously do not, on their face, suggest Mr. Sumler was attempting to discourage plaintiff from bringing a claim. Moreover, plaintiff's inference from Mr. Sumler's

tone a threat to her job as a consequence of filing a complaint, without more, does not show the degree of intimidation or restraint required to justify tolling.[9] The court finds that Mr. Sumler's comments regarding religion do not manifest an attempt to restrain plaintiff from filing her complaint, nor do they signal "active deception." Her claim must fail due to her delay in filing the complaint until over one year following the promotion decision.

## C. The McDonnell Douglas Burden Shifting Analysis

In the alternative, the court finds that even if tolling were warranted, summary judgment is appropriate against plaintiff because she has failed to demonstrate that the defendant's proffered nondiscriminatory reasons for choosing Mr. Burdick over her were pretextual. As such, no genuine issue of material fact remains. Under the McDonnell Douglas framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). After the plaintiff has established a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its employment action. *Id.* If defendant meets this burden, plaintiff must then show that defendant's justification is pretextual. *Id.* at

---

**8.** In its analysis, the court is mindful of 29 C.F.R. § 1614.105(g)'s admonition that a counselor "shall not attempt in any way to restrain the aggrieved person from filing the complaint." Though plaintiff does not cite this regulation in her brief, the court nevertheless finds that Mr. Sumler's conduct does not rise to the level of that prohibited by the regulation.

**9.** As previously noted in the court's opinion, the Tenth Circuit in Mascheroni rejected plaintiff's contention that a workplace "cul-

ture that avoids outside scrutiny and bristles at outside interference in internal affairs" and pressure from his employer to resolve his complaint internally "[did] not rise to the level of active deception about the procedures for filing a Title VII claim" that the court articulated in *Scheerer v. Rose State College*, 950 F.2d 661, 665 (10th Cir.1991), and *Wilkerson v. Siegfried Insurance Agency*, 683 F.2d 344, 348 (10th Cir.1982) as necessary to justify equitable tolling. *Mascheroni v. Bd. of Regents*, 28 F.3d 1554, 1562–63 (10th Cir. 1994).

804, 93 S.Ct. 1817; *Lundien v. United Airlines*, 242 F.3d 389, 2000 WL 1786579, at *3 (10th Cir.2000) (Table, text in Westlaw) (citing *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668).

To state a prima facie case of an illegal failure to promote under Title VII, a plaintiff must show that "(1) there was a promotional opportunity available; (2) the plaintiff was qualified and had established availability for the position; (3) despite plaintiff's qualifications, she was not promoted to the position; and (4) the promotional opportunity remained opened or was filled." *Pfahl v. Synthes (USA)*, 13 Fed.Appx. 832, 834–35 (10th Cir.2001) (Table, text in Westlaw) (citing *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir.1997)).

█ Plaintiff has satisfied her initial burden of stating a prima facie case of gender discrimination regarding her claim of failure to promote under Title VII. Plaintiff has demonstrated that the Grade 12 position was open and she applied for it, that she was qualified for consideration for the Grade 12 promotion, and that Mr. Burdick filled the position. Whether plaintiff was more qualified than Mr. Burdick is a decision properly within the purview of the hiring officials and not the court, so long as the defendant did not consider gender as a factor in violation of Title VII or other impermissible criteria.

█ The court finds that defendant satisfied its burden of producing nondiscriminatory justifications for its decision to hire Mr. Burdick. The above-mentioned facts regarding interview performance, edu-

cation, experience, and qualifications present an adequate ground upon which to infer that the officials made their decision to hire Mr. Burdick without regard to gender.

█ The court also finds plaintiff failed to adequately demonstrate that defendant's reasons were "pretextual, i.e., unworthy of belief." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1177 (10th Cir.1999)). A plaintiff generally shows pretext by evidence that: (1) defendant's proffered reasons are false; (2) defendant acted contrary to a written company policy that prescribed the appropriate action under the circumstances; or (3) defendant acted contrary to an unwritten policy or to company practice when making the adverse employment decision. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

There is no showing that the interviewers did not in fact rely upon the factors they claim to have considered in arriving at their decision or that they acted in violation of agency policy. Moreover, plaintiff admits that prior to learning her BQL score, she stated she would not have been surprised if Mr. Burdick were selected because he had more experience than she. Without evidence of pretext before it, the court finds that plaintiff's claim fails on the merits.[10] No genuine issue of material

---

10. The court notes that on several occasions throughout plaintiff's reply to defendant's motion for summary judgment, she refutes defendants' statements of fact by merely expressing doubt as to whether they are true. Such responses do not adequately controvert the facts established by defendant. See *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408 n. 7

(10th Cir.1997) ("[S]ubjective belief of discrimination is not sufficient to preclude summary judgment."). District of Kansas Rule 56.1 prescribes that "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

fact exists and summary judgment is justified.

## IV. Retaliation

In her complaint, plaintiff contends that defendant assigned her less challenging work than she was capable of doing and permitted her coworkers to choose their work assignments while denying her the same opportunity after she requested higher graded duty pay, and that this treatment constituted retaliation. Defendant counters by arguing that because plaintiff elected to pursue the retaliation claim pursuant to an internal grievance rather than under Title VII, EEOC regulations prohibit her from pursuing the Title VII claim. Moreover, defendant argues that because plaintiff's higher graded duty pay request was not protected EEO activity, plaintiff cannot state a claim of retaliation under Title VII even if her claim is properly before the court. The court agrees with defendant, and finds that the plaintiff's claim is not properly before the court and, in the alternative, that the plaintiff has failed to state a prima facie retaliation claim. Therefore, as set forth below, the court awards summary judgment in favor of the defendant on plaintiff's claim of retaliation.

### A. Election of Remedies

■ Defendant argues that EEOC regulations prohibit the plaintiff from filing a Title VII claim based on the same facts of which she complained in her internal grievance. Plaintiff counters by saying that her union grievance mentioned neither gender discrimination nor Title VII and, as such, does not preclude her from bringing a Title VII claim. The court finds that plaintiff may not maintain a Title VII claim arising out of the same facts as those stated in her union grievance. Plaintiff's retaliation claim and her Title VII claim are based on precisely the same facts upon which she complained in her union grievance—namely, that she was retaliated against after she requested higher graded duty pay. Federal regulations provide that a plaintiff must pursue a claim of discrimination under either Title VII or through an internal grievance, but may not bring both:

> A person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter **under either part 1614 or the negotiated grievance procedure, but not both**.... An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination.

29 C.F.R. § 1614.301(a) (2001) (emphasis added). In addition, under 5 U.S.C. § 7121(d),

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter **under a statutory procedure or the negotiated procedure, but not both**. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. (emphasis added).

In plaintiff's internal grievance which she settled with her employer, she sought

relief from retaliation for requesting higher graded duty pay and that work be assigned in an equitable manner—precisely the same claims for which she now seeks relief under Title VII. Mr. Klaus executed a memorandum stating that retaliation would cease and that work would be distributed in a manner commensurate with the level of plaintiff's position. In addition, the settlement agreement included an award of back pay, interest, and a temporary promotion to plaintiff for the period in question.

The court finds that plaintiff is prohibited from bringing the same claims of retaliation under Title VII. Plaintiff's complaint contains no additional facts to distinguish her claim from that brought pursuant to the internal grievance. Plaintiff's memorandum in opposition to defendant's motion for summary judgment raises no arguments as to why her Title VII claim should be allowed to coexist with her already settled internal grievance. As a result, the court finds that her retaliation claim is procedurally barred, and grants summary judgment in favor of the defendant.[11]

Even if plaintiff could maintain the Title VII retaliation claim, however, she cannot establish a prima facie case because the activity she claims caused the alleged retaliation was not protected under Title VII.

### B. Prima Facie Case

"A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir.2000). Title VII protects employees from retaliation if they have "opposed any practice made an unlawful employment practice by this subchapter, or ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994); see also *Shinwari v. Raytheon Aircraft Co.*, 2000 WL 731782, at *4–6, 215 F.3d 1337 (10th Cir.2000) (Table, text in Westlaw), cert. denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 722 (2001).

█ Plaintiff's claim of retaliation stems from her request for higher graded duty pay for work she completed on a Grade 13 level case, which is not protected EEO activity. The grievance does not allege any type of discriminatory conduct based on gender, and plaintiff admits that her grievance contained no Title VII claims. Because plaintiff did not engage in activity that is protected under Title VII prior to defendants' alleged retaliation, she cannot state a prima facie case of gender discrimination.

### V. Hostile Work Environment

█ In her complaint, plaintiff alleged that a hostile work environment existed at the Parsons office. She claimed to have experienced several instances of verbal harassment and intimidation. Defendant points out that plaintiff failed to include the hostile work environment claim in the

---

11. Moreover, any alleged retaliatory activity that occurred prior to April 25, 1999 falls outside the forty-five day period required by 29 C.F.R. § 1614.105 in which plaintiff must contact an EEO official, as addressed above. It is unclear from the pleadings whether plaintiff seeks relief for any events occurring after that date. Plaintiff has not alleged a continuing violation theory sufficient to preserve claims related to events prior to April 25, 1999. As such, the court notes that it is without subject matter jurisdiction to hear any alleged retaliatory activity prior to April 25, 1999, for the same reasons that plaintiff's failure to promote claim is not properly before the court.

pretrial order and improperly attempted to raise it again in her reply to defendant's motion for summary judgment. Defendant further argues that the events of which plaintiff complains do not indicate the existence of a hostile work environment.

The court finds that summary judgment in favor of the defendant is appropriate due to the plaintiff's failure to preserve the hostile work environment claim by excluding it from the pretrial order. Fed. R.Civ.P. 16(e); *Hullman v. Bd. of Trs.*, 950 F.2d 665, 667 (10th Cir.1991) ("The trial court has the discretion to exclude from trial those issues and claims not found in the pretrial order. A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in response of defendant's motion for summary judgment.") (citations omitted). Moreover, the hostile work environment claim is subject to the same procedural defects as the failure to promote claim; namely, plaintiff's failure to consult an EEO official within forty-five days of the alleged discriminatory events.

The court further determines that plaintiff's hostile work environment claim fails, even despite its procedural defects, because plaintiff cannot set forth a prima facie case. Among plaintiff's allegations are that one employee yelled her name across a room, that she was excluded from lunch plans, and that she was the subject of snide comments. In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court established a two-prong test for a hostile work environment. The harassing conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive," and the plaintiff must "subjectively perceive the environment to be abusive." *Id.* at 21, 114 S.Ct. 367.

Courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. Viewing the facts in the light most favorable to the plaintiff, the court finds that there is no showing that this treatment stemmed from gender animus. The court also finds that the conduct of which plaintiff complains does not rise to the level of severity and pervasiveness necessary to establish a claim of a hostile work environment grounded in gender discrimination under Title VII.

## VI. Order

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 63) is granted.