**Anna R. JOHNSON, Plaintiff,**

v.

**Dan GLICKMAN, Secretary of Agriculture, Defendant.**

No. 99–2180–KHV.

United States District Court, D. Kansas.

Feb. 9, 2001.

Theresa D. O'Toole, Parkville, MO, Rebecca M. Randles, Kansas City, MO, Rachel Foley, Independence, MO, for Plaintiff.

Janice M. Karlin, Office of United States Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Anna R. Johnson alleges that on account of her race and in retaliation for prior complaints of discrimination, defendant reassigned her and thereby restricted her ability to train in the finance division of the Kansas City office of the United Stated Department of Agriculture ("USDA").[1] Defendant maintains that plaintiff's claims

---

1. At the evidentiary hearing on November 20, 2000, counsel for plaintiff informed the Court that plaintiff will not pursue hostile work environment claims in this lawsuit. See Com-

are barred because she did not contact an Equal Employment Opportunity counselor ("EEO counselor") within 45 days of the reassignment pursuant to 29 C.F.R. § 1614.105(a)(1). Plaintiff agrees that she did not contact an EEO counselor within 45 days of the reassignment; she contends, however, that the time should not begin to run until she learned of the alleged discriminatory motive behind the reassignment. Plaintiff also argues that each denial of training constitutes a separate adverse employment action which either forms the basis for a continuing violation or at least supports an independent claim for acts which occurred within 45 days of her contact with an EEO counselor.

On November 20, 2000, the Court held a bifurcated evidentiary hearing to determine whether plaintiff's claims are timely.[2] For reasons set forth below, the Court finds that except for claims regarding the denial of training after March 10, 1998, plaintiff's claims should be dismissed.[3]

## I. Facts

Plaintiff has worked for the USDA for 12 years. In May 1997, when she worked as a claims assistant in debt management in the finance division, plaintiff and defendant entered into a settlement agreement regarding four Equal Employment Opportunity complaints. Under the agreement, plaintiff agreed to transfer to the position of classification assistant in the classification and organization branch of the personnel division. Consequently, on May 11, 1997, plaintiff began working as a classification assistant, a position which she holds today. In this position, plaintiff assists classification specialists who are assigned to the same areas. As a result, plaintiff works for several specialists at the same time. Her primary duties include performing desk audits and preparing notifications of personnel action, which are called SF52s, for employees at GS-8 grade level and below.

Initially, plaintiff was assigned to assist with classification duties in the finance division. On August 14, 1997, she accompanied Ken Howell, a classification specialist, to the offices of Kathy Webb Tapp, chief of the debt management division, to discuss Tapp's request to upgrade certain GS-5 claims clerk positions. After the meeting, Tapp called her supervisor, Lester Flandermeyer, deputy director of the Kansas City finance office. Tapp told Flandermeyer that she was not comfortable having plaintiff work on the claims clerk upgrade. Tapp did not believe that plaintiff could be objective because she had alleged in her previous EEO complaints that Tapp was partly responsible for creating a racially hostile working environment. Flandermeyer called plaintiff's supervisor, Barbara Whiteside, who assigned plaintiff away from finance in late August or early September. Despite the reassignment, plaintiff continued to work for Howell on the claims clerk upgrades—but she did not accompany him to meetings with managers or employees in the finance area. Meanwhile, she assisted another classification specialist, Karen McCullough, on secretary position upgrades in the finance department. In November 1997, she accompanied McCullough to a meeting in finance. At some point, the secretary upgrades were put on hold. They remained on hold

---

*plaint* (Doc. # 1) filed April 20, 1999, ¶¶ 9–14, 19–20.

**2.** The parties have stipulated that the Court make findings of fact for purposes of this ruling.

**3.** Also before the Court is *Plaintiff's Motion To Strike Defendants [sic] Findings Of Fact And Conclusions Of Law* (Doc. # 53) filed November 16, 2000. In light of the fact that both parties have now filed amended findings of fact and conclusions of law, the motion is overruled as moot.

until January 1998, when they were assigned to Deonne Pitts, another classification specialist.

In 1998, Pitts planned to perform desk audits for the secretary positions in finance, as well as certain positions in the commodity finance operations division ("CFOD").[4] She put the CFOD audits on hold in order to complete the secretary audits. Beginning in at least February 1998, plaintiff began asking to go to finance with Pitts on desk audits for the secretary and/or CFOD positions. Plaintiff's supervisor had recommended that plaintiff go with Pitts on desk audits because Pitts had the most experience and could provide the best training. Both Pitts and plaintiff were assigned to the southwest area, but Pitts was busy with the audits in finance. Pitts put plaintiff off by giving various excuses why she should not go on the audits.[5]

In late February and/or early March 1998, Pitts performed desk audits for the secretaries in the finance area. Later, in March or April, she conducted the CFOD audits. Shortly before March 14, 1998, plaintiff overheard Pitts and Whiteside discussing either the secretary or CFOD desk audits.[6] Plaintiff asked Pitts if she could

---

4. The record is unclear regarding which positions in CFOD needed audits.

5. Pitts testified that she did not know the details of plaintiff's departure from the finance division, but she knew that plaintiff had negative feelings toward the department. Pitts was not comfortable having plaintiff present on the audits because she wanted the employees who were being audited to feel as comfortable as possible.

6. The parties dispute when this conversation occurred and whether it occurred in the context of the secretary or CFOD audits. Pitts testified that the conversation must have occurred in mid-February because she sent out a checklist for the secretary audits at that time and she remembers that plaintiff asked to go on the secretary audits. Plaintiff, on the other hand, contends that the conversation occurred in March, when she asked to go on the CFOD audits, because afterwards she immediately went home and wrote a memorandum to Daniel Glickman which is dated March 14, 1998. Although plaintiff's testimony regarding the exact date of the conversation was not precise (plaintiff initially testified that the conversation occurred on March 14 but then admitted on cross-examination that March 14 was a Saturday so the conversation could not have occurred on that day), the Court believes that plaintiff's version is probably more accurate. While the Court agrees with Pitts that plaintiff asked to go on the secretary audits, Pitts' memory was not clear whether the conversation with Whiteside occurred in the context of the secretary audits, or at what point during the secretary audits the conversation occurred.

Defendant deduces that the conversation must have happened in the context of the secretary audits because Pitts performed the secretary audits before she worked on the CFOD audits. Defendant looks to the times when the positions were promoted (secretaries in April and CFODs in June or July) and determines that the audits were performed 30 days prior to the promotions. Defendant contends that the CFOD audits must not have occurred until May 1998, since the CFOD positions were not promoted until June or July. It is unclear, however, how much time elapsed between the time Pitts completed the audits and the time of the promotions. Pitts testified that she is allowed at least 30 days to prepare a report after the audit. Standing alone, this testimony does not convince the Court that she performed the audits 30 days before the promotions. First, Pitts testified that she is allowed *at least* 30 days, which allows the possibility of additional time. Second, the record does not reflect who must review the report and approve the promotion, or how long that process may take. Finally, we do not know how long it took Pitts to perform the audits. The testimony indicates that the secretary audits were placed on a faster track than the CFOD audits. It appears that Pitts began the secretary audits within a week or two after February 19 and that she audited six secretaries, some of whom were in St. Louis. It is possible that she was still working on the secretary audits on March 14; however, it is equally plausible that she had completed the secretary audits and started

go on the audits. Pitts replied that she did not mind, but that plaintiff would have to ask Whiteside. As Whiteside was leaving Pitts' desk, plaintiff asked if she could go. Whiteside at first said yes, but when she realized that the audit was in finance, she returned and said that plaintiff could not go. According to plaintiff, Whiteside told her that plaintiff knew that she was not supposed to go to finance because Flandermeyer did not want her there.

On March 14, 1998, plaintiff wrote a memorandum to Daniel Glickman, Secretary of Agriculture, regarding "[c]ontinued reprisal action for past EEO Complaints that [she] filed against ... managers under the direction of Les Flandermeyer." In the memorandum, plaintiff complained in detail that Flandermeyer had restricted her from valuable on the job training in finance in retaliation for her prior EEO complaints.

Plaintiff testified that during the conversation with Whiteside, in mid-March of 1998, she learned for the first time that Flandermeyer had restricted her from training in finance. On May 1, 1998, however, plaintiff admitted in a memorandum to an EEO counselor that she first learned of the restriction some six months earlier, in September 1997:

> I first learned of the restriction around September 1997, [sic] I was told not to go back to any of the areas under Deputy Director of Finance (DDF) Les Flandermeyer, and I should switch with another assistant until further notice. When the other assistant was detailed I accomplished the work for the DDF's area. I just could not accompany the Specialist on any visits to those areas for

meetings with managers and/or employees, to discuss and review the organizational structure of the areas. . . . After asking to go on several organization review visits and not being allowed to go in any of those particular areas, it was apparent that I was missing valuable [on the job training] so I questioned why, and learned it was because of the request made by Les Flandermeyer to keep me out of his area.

Exhibit E, memorandum from plaintiff to Gloria Scurry dated May 1, 1998.

At the hearing, plaintiff tried to explain away her concession that she first learned of the restriction in September 1997. She testified that she meant to say that after she talked with her supervisor in March of 1998, she remembered that the restriction had started in September of 1997. This testimony is not credible. Plaintiff's memorandum stated that she was told in September of 1997 not to go into the areas under Flandermeyer until further notice and also stated that when she performed work for the finance area, she was not allowed to accompany the specialist on visits to the area. Plaintiff testified that she made every attempt to make the memorandum accurate, and she made at least two corrections by hand before sending it. The Court believes that plaintiff's memory was more accurate at the time she wrote the memorandum and that plaintiff knew about the restriction in September 1997.

On April 24, 1998, plaintiff sent an e-mail to George Johnston, whom she had previously dealt with as an EEO counselor. The subject heading of the e-mail was "Reprisal Action," and her message stated:

working on the CFOD audits, or that plaintiff asked to go on the CFOD audits before she had begun working on them. According to plaintiff's testimony, 60 to 90 days usually elapse between the time of an audit and a subsequent promotion. In light of all the

evidence, the Court concludes that the conversation with Whiteside most likely happened on March 13, 1998, and that it could have arisen in the context of either the secretary or the CFOD audits.

"For the EEO record please call me at 926–6308[.] Thanks[,] Anna." On April 27, 1998, Johnson replied that he no longer provided EEO counseling. He gave plaintiff the number to call for an EEO counselor assignment. Shortly after April 24, plaintiff received a phone call from Gloria Scurry, an EEO counselor. Ms. Scurry initiated contact with plaintiff because she had received a copy of plaintiff's letter to Glickman dated March 14, 1998. After the telephone conversation, plaintiff prepared a memorandum to Scurry dated May 1, 1998, which set forth her claims of discrimination and/or retaliation.

## II. Analysis

### A. Burden of Proof

 The determination who bears the burden of proof depends on whether the failure to timely comply with administrative prerequisites is a jurisdictional bar to filing a discrimination claim, or whether the failure merely operates as an affirmative defense, like a statute of limitations defense, which may be equitably tolled. If it is jurisdictional, plaintiff bears the burden of proof. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1271 (10th Cir.1998) (party asserting jurisdiction has burden of proving it). If it is an affirmative defense, defendant bears the initial burden to show that plaintiff did not timely comply with administrative prerequisites, *see, e.g., Koch v. Shell Oil Co.,* 52 F.3d 878, 880 (10th Cir.1995) (applying Kansas statute of limitations law), and plaintiff must prove that her claims should be equitably tolled. *See, e.g., Resolution Trust Corp. v. Thomas,* 837 F.Supp. 354, 359 (D.Kan.1993).

 The Tenth Circuit has noted that the law on this issue is unclear. *See Blackwell v. Runyon,* 116 F.3d 1489, 1997 WL 362267, *2 n. 1 (10th Cir.1997). In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234

(1982) (private discrimination context), the Supreme Court held that the failure to file a timely EEOC charge is not jurisdictional, but rather similar to a statute of limitations defense which is subject to waiver, estoppel and equitable tolling. After *Zipes,* the Tenth Circuit has continued to rule that exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII. *See Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir.1996). Nevertheless, a distinction exists between the complete failure to exhaust administrative remedies and the failure to *timely* exhaust administrative remedies. *See id.* at 1399 n. 1 ("even after Zipes our court has referred to the requirement of an EEOC filing (as opposed to a mere requirement of a timely filing) as a jurisdictional requirement"). Thus it appears that the failure to timely comply with administrative prerequisites operates as an affirmative defense which is subject to waiver, estoppel and equitable tolling. *See Richardson v. Frank,* 975 F.2d 1433, 1435 (10th Cir. 1991). Accordingly, defendant bears the burden to show that plaintiff failed to timely comply with administrative prerequisites, and plaintiff has the burden to prove that the time limitation should be equitably tolled.

### B. Contact With An EEO Counselor

 Defendant asserts that plaintiff's e-mail to Johnston does not constitute sufficient contact with an EEO Counselor within the meaning of 29 C.F.R. § 1614.105(a)(1). Under Section 1614.105(a)(1), a federal employee must "initiate contact" with an EEO counselor within 45 days of an alleged discriminatory action. The purpose of this requirement is to give a federal agency an opportunity to informally resolve an employee's complaint by conducting internal investigations. *See Briggs v. Henderson,* 34 F.Supp.2d 785, 787 (D.Conn.1999). Where employees be-

gin the EEO process and are not represented by counsel, the correct inquiry is whether the purpose of the time limit has been met and whether the agency was put on adequate notice of the discrimination claims. *See Richardson*, 975 F.2d at 1436 ("Title VII is remedial legislation to be construed liberally rather than technically") (interpreting pre–1992 EEOC regulations).

■ In determining whether an employee has sufficiently initiated EEO contact within 45 days, the Court defers to rulings by the Equal Employment Opportunity Commission ("EEOC") unless they are plainly erroneous or inconsistent with the regulation. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165–66 n. 5 (10th Cir.1999) (EEOC interpretation of its own regulations entitled to deference); *see also Briggs*, 34 F.Supp.2d at 787; *Pauling v. Secretary of Dept. of Interior*, 960 F.Supp. 793, 803 (S.D.N.Y.1997). The EEOC has held that in order to sufficiently initiate contact, the employee must (1) contact an agency official logically connected with the EEO process, even if the official is not an EEO counselor; (2) demonstrate an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination.[7] *See Pauling*, 960 F.Supp. at 803 (citing various EEOC rulings). *See also Steinert v. Gober*, 32 F.Supp.2d 842,

856–46 (D.S.C.1998) (noting that cases have uniformly held that aggrieved employee must allege acts of discrimination and manifest desire to begin EEO process).

The Court easily concludes that the e-mail to Johnston satisfies the first element, i.e. contact with an agency official logically connected with the EEO process. The fact that Johnston was no longer an EEO officer is not determinative. *See HANSON v. WEST*, 1996 WL 375772, *3, Appeal No. 1950863 (E.E.O.C.1996) (employee may satisfy counselor contact requirement by initiating contact with any agency official logically connected with EEO process, even if individual is not counselor). Johnston had formerly served as an EEO counselor and plaintiff had dealt with him in that capacity. As such, he was logically connected with the EEO process. *See CLEVENGER v. DANZIG*, 2000 WL 270449, *3, Appeal No. 01985794 (E.E.O.C.2000) (contact with former deputy EEO director logically connected with EEO process).

Whether the e-mail standing alone satisfies the second and third factors, however, is a closer call. Considered with other evidence, the Court concludes that it does. In her message, plaintiff told Johnston that the e-mail was "[f]or the EEO record." Although the message is brief, it

---

7. The Court finds that the EEOC rulings are not plainly erroneous or inconsistent with the regulation. It is unclear, however, whether the EEOC imposes the second and third elements as individual requirements or different expressions of a single requirement or alternative requirements. *CLEVENGER v. DANZIG*, 2000 WL 270449, *3, Appeal No. 01985794 (E.E.O.C.2000) (remanding action for agency to investigate whether complainant raised allegation of discrimination "and/or" exhibited intent to pursue EEO rights); *DYLEWSKI v. WEST*, 2000 WL 58435, *3, Appeal No. 01985652 (E.E.O.C.2000) (noting lack of evidence whether complainant raised allegations of discrimination with EEO officer, "i.e., exhibited an intent to pursue her EEO rights"); *Moss v. Perry*, 1997 WL 91106, *2, Appeal No. 01962472 (E.E.O.C.1997) (45 day limit requires at minimum that complainant intend to pursue EEO counseling when she initiate EEO contact); *DUMAGUINDIN v. DALTON*, 1996 WL 159315, *3, Appeal No. 01954218 (E.E.O.C.1996) (EEOC has consistently held that complainant satisfies EEO contact requirement by contacting agency official logically connected with EEO process and by exhibiting intent to begin EEO process). The Court does not address this issue further, however, because plaintiff satisfies both elements.

connotes an intent to begin the EEO process. In fact, Johnston understood that plaintiff sought EEO counseling and responded with information regarding how to receive an EEO counselor assignment. Moreover, plaintiff followed through with her intent. Within a week of the e-mail, she had spoken with and written a detailed memorandum to EEO counselor Scurry concerning her claims. Based on this evidence, the Court finds that plaintiff's e-mail to Johnston sufficiently exhibited an intent to pursue EEO counseling. *See, e.g., ORTIZ v. COHEN,* 1999 WL 1049404, *1, Appeal No. 01994134 (E.E.O.C.1999) (complainant's conduct after initial meeting with counselor further demonstrated intent to begin EEO process); *Moss v. Perry,* 1997 WL 91106, *2, Appeal No. 01962472 (E.E.O.C.1997) (noting that complainant did not simply send letter to EEO counselor and do nothing; she actively pursued complaint as evidenced by correspondence to EEO officials over next several months).

■ As to the third element, the subject heading of plaintiff's e-mail stated that she was contacting Johnston regarding "Reprisal Action." The Court questions whether this reference, standing alone, is adequate to allege an incident based on discrimination. *But see ORTIZ,* 1999 WL 1049404 at *1 (complainant's statement to EEO counselor that she had been victim of discrimination established date of initial EEO contact). Nevertheless, in light of the duty to liberally construe the remedial provisions of Title VII, *see Richardson,* 975 F.2d at 1436, the Court will consider other information before the agency, namely the March 14 letter to Glickman. In the let-

ter, plaintiff described in detail her belief that Flandermeyer had restricted her training in finance in retaliation for her prior EEO complaints. Combined, the letter and e-mail provided adequate notice of plaintiff's discrimination claims. Thus plaintiff's claims are timely with respect to acts which occurred within 45 days prior to April 24, 1998, on or after March 10, 1998.

## C. Equitable Tolling

■ Plaintiff asserts that her claims of earlier discrimination are timely because she did not find out that Flandermeyer had restricted her access to finance until she had the conversation with Whiteside on March 13, 1998.[8] This argument fails, in light of the Court's finding that plaintiff knew of the restriction in September 1997. Section 1614.104.105(a)(2), 29 C.F.R., provides an extension of time to contact an EEO counselor when an individual shows

> that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2).[9] The fact that plaintiff may not have discovered the alleged discriminatory motive for the restriction until later does not extend her time to contact an EEO counselor. Rather, the 45 days began to run when plaintiff learned of

---

**8.** Plaintiff does not allege facts to support a traditional claim of equitable tolling. *See Million v. Frank,* 47 F.3d 385, 389 (10th Cir. 1995) (to equitably toll claim plaintiff must show that defendant has actively misled her with respect to cause of action, or that plain-

tiff has been prevented in some extraordinary way from asserting her rights).

**9.** Plaintiff does not claim that she did not know of the time limits or that she was prevented from contacting a counselor within the time limits.

the restriction and was on notice to inquire whether the motive was discriminatory. *See Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557–58 (10th Cir.1994); *see also Pacheco v. Rice,* 966 F.2d 904, 906 (5th Cir.1992) (rejecting argument that time to notify EEO counselor did not run until plaintiff first perceived that circumstances surrounding personnel action were discriminatory).

### D. Continuing Violation

▆▆▆▆ Alternatively, plaintiff argues that each denial of training was part of a continuing violation which extended the time for her to contact an EEO counselor. Under the continuing violation theory, plaintiff may challenge incidents which occurred outside the statutory time limitation if they are sufficiently related to events which occurred within the time period and thus constitute a "continuing pattern of discrimination." *Mascheroni v. Board of Regents of Univ. of Calif.,* 28 F.3d 1554, 1560 (10th Cir.1994). In order to recover under this theory, plaintiff must show that at least one instance of the discriminatory practice occurred within the statutory period. *See id.* at 1561. The discriminatory act need not constitute a legally sufficient claim in itself, but plaintiff cannot simply assert that acts which occurred outside the statutory period had a continuing effect within the statutory period. *See id.* In this case, plaintiff has shown that at least one instance on which defendant denied her training—the conversation with Whiteside on March 13, 1998—occurred within 45 days of her EEO contact.

▆▆▆ While the law has outlined no well-defined standard, the Tenth Circuit has identified the following non-exclusive factors to determine whether a violation is continuous: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Mascheroni,* 28 F.3d at 1561. The third factor limits the reach of the continuing violation doctrine to those situations which fall within the equitable premise that the time limitations should not begin to run until a reasonable person would be aware that her rights have been violated. *See Martin v. Nannie & Newborns, Inc.,* 3 F.3d 1410, 1415 n. 6 (10th Cir.1993).

▆▆▆ Applying these factors, the Court concludes that plaintiff has failed to show a continuing violation. Specifically, plaintiff fails to satisfy the third factor, *i.e.* that the nature of the violation should not have triggered her awareness of the need to assert her rights. Plaintiff knew of the restriction in September 1997, and at that time she had a duty to inquire into the reason behind the restriction. In light of this finding, plaintiff cannot rely on the continuing violation theory to avoid the statutory time bar. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1311 (10th Cir.1999). Moreover, the Court notes that plaintiff began asking to train in finance in early February 1998. Despite her familiarity with the EEO process, plaintiff chose to write a letter to Glickman on March 14, 1998, instead of contacting an EEO counselor.[10] If plaintiff had chosen to initiate the EEO process at that time,

---

**10.** Plaintiff's memorandum to Glickman did not indicate an intent to begin the EEO process. To the contrary, she stated:

> I have chosen to file civil actions in the U.S. District Federal Courts rather then [sic] continue to beg for equality and justice un-

der USDA's in-house appeal processes. I will be filing the papers for the Civil Actions on or before April 1, 1998.

Exhibit C, memorandum from plaintiff to Glickman dated March 14, 1998.

her requests to train in February would be timely.

### E. Individual Requests To Train

As previously discussed, plaintiff alleges at least one instance on which defendant denied her training within 45 days of her EEO contact. Accordingly, plaintiff's claims are timely with respect to training denials which occurred on or after March 10, 1998.[11]

IT IS THEREFORE ORDERED that except for acts which occurred on or after March 10, 1998, plaintiff's claims of discrimination and retaliation resulting from her reassignment and training restriction are **DISMISSED with prejudice** as untimely.

IT IS FURTHER ORDERED that plaintiff's hostile work environment claims are **DISMISSED without prejudice.**

IT IS FURTHER ORDERED that *Plaintiff's Motion To Strike Defendants [sic] Findings Of Fact And Conclusions Of Law* (Doc. # 53) filed November 16, 2000 be and hereby is **OVERRULED as moot.**

---

11. The Tenth Circuit applies a liberal interpretation in determining whether acts constitute an adverse employment action under Title VII. *See, e.g., Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (10th Cir.1998) (court does not recognize "materiality" requirement and takes case-by-case approach to determine whether employment action is adverse). *Compare Johnson v. Danzig*, 213 F.3d 631, 2000 WL 458887, *1 (4th Cir.2000) (denial of training not adverse employment action where plaintiff offers no evidence that she was denied promotion, bonus or similar employment opportunity as result); *Williams v. Munoz*, 106 F.Supp.2d 40, 43 (D.D.C.2000) (plaintiff's claim may be in considerable jeopardy if it is later shown that denial of training had no materially adverse consequences on future employment opportunities); *Madiedo v. Miami–Dade County*, Case No. 99–1422–CIV, 2000 WL 1763845, *4 (S.D.Fla.2000); *Corpuz v. Sec'y, Dept. of Health & Human Servs.*, Case No. 97–1663–ST, 1999 WL 562693, *8 (D.Or. 1999). Thus the Court cannot conclude that plaintiff's allegations fail as a matter of law.