**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

WILLIAM BERRY,

     Plaintiff - Appellant,

v.

PAMELA J. BONDI, in her official
capacity as United States Attorney,

     Defendant - Appellee.

No. 25-2014
(D.C. No. 1:24-CV-00052-JFR-SCY)
(D. N.M.)

_____

## ORDER
_____

Before **HOLMES**, Chief Judge, **HEIL**,[*] and **MATHESON**, Circuit Judges.
_____

This matter is before the court on Appellant's *Petition for Panel Rehearing*. Upon consideration, the petition is denied. *See* 10th Cir. R. 40.1(A) ("Panel rehearing will be granted only if a significant issue has been overlooked or misconstrued by the court.").

We sua sponte revise the Order and Judgment issued on February 23, 2026 to the extent of the modifications to footnote 10 in the attached revised decision, which shall be filed as of the date of this order.

---

[*] The Honorable John F. Heil, Chief District Judge, United States District Court, Northern District of Oklahoma, sitting by designation.

Because we have made only non-substantive changes to the Order and Judgment that do not affect the outcome of this appeal, Appellant may not file a second or successive petition for rehearing. *See* 10th Cir. R. 40.4(A).

Entered for the Court

Per Curiam

FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 2, 2026**

Christopher M. Wolpert
Clerk of Court

_____

WILLIAM BERRY,

     Plaintiff - Appellant,

v.

PAMELA J. BONDI, in her official
capacity as United States Attorney,

     Defendant - Appellee.

No. 25-2014
(D.C. No. 1:24-CV-00052-JFR-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **MATHESON**, Circuit Judge, and **HEIL**,[**] District
Judge.

_____

Former FBI Special Agent William Berry alleged he experienced

discrimination, retaliation, and a hostile work environment at the FBI.  He sued under

Title VII of the Civil Rights Act of 1964.  The district court granted summary

judgment to the Government, mostly because Mr. Berry failed to exhaust his

administrative remedies.  It also denied his motion for more discovery.  Exercising

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable John F. Heil, Chief District Judge, United States District
Court, Northern District of Oklahoma, sitting by designation.

jurisdiction under 28 U.S.C. § 1291, we affirm for the most part but remand one issue for the district court's consideration.

## I.    BACKGROUND

### A. *Exhaustion*

Much of this appeal concerns whether Mr. Berry exhausted his administrative remedies before filing suit. We provide a brief overview of exhaustion to facilitate understanding of the factual and procedural history leading to this appeal.

Title VII claimants, including federal employees, must exhaust their administrative remedies before suing in federal court. *Green v. Brennan*, 578 U.S. 547, 552 (2016); *see also Dossa v. Wynne*, 529 F.3d 911, 913 (10th Cir. 2008). Although exhaustion "is not a jurisdictional prerequisite," it is a "claims-processing rule that the employer may raise as an affirmative defense," and that the court must enforce when "properly raise[d]." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir 2020); *see also Fort Bend Cnty. v. Davis*, 587 U.S. 541, 551 (2019).

"Federal employees alleging discrimination or retaliation prohibited by Title VII . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey*, 969 F.3d at 1118 (quotations omitted). They must "initiate contact" with an Equal Employment Opportunity ("EEO") counselor at their agency "within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1), and also file an EEO complaint with their agency, 29 C.F.R. § 1614.106(a); *see also Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) ("[A] plaintiff's claim in court is

generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." (quotations omitted)). The FBI's Office of Equal Employment Opportunity Affairs ("OEEOA") receives and investigates EEO complaints.

"[E]ach discrete incident" of alleged discrimination or retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002)). For hostile work environment claims, only one of the alleged acts contributing to the alleged hostile environment must occur within the 45-day reporting period. *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1140 (10th Cir. 2008); *see also Marquez v. Johnson*, 545 F. App'x. 735, 738-39 (10th Cir. 2013) (unpublished) (applying *Tademy* to the 45-day reporting requirement).[1]

### B. *Factual History*

**1. Factual Allegations in Mr. Berry's Amended Complaint**

For purposes of summary judgment, the Government did not contest the following facts that Mr. Berry alleged in his amended complaint.

In June 2020, the FBI assigned Mr. Berry, a Black man and FBI special agent, to a unit responding to a Black Lives Matter ("BLM") protest in Washington, D.C.

---

[1] We cite unpublished opinions in this order and judgment for their persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Mr. Berry and several other unit members took a knee at the protest.  Shortly after, the FBI transferred him to its resident agency in Farmington, New Mexico ("the FRA").[2]

Between June 2020 and his resignation from the FBI in 2023, Mr. Berry endured discriminatory and retaliatory conduct against him by FRA Supervisory Special Agent Bill Hall ("SSA Hall"), Special Agent Kalon Fancher (SA Fancher), and other FRA agents.

From June 2020 to June 2022, SSA Hall made offensive comments based on race.  These included statements that all BLM protestors should "be killed," that Mr. Berry was "going to be a problem" because he was "interracial," and that "black people need to get over racism."  App., Vol. I at 38-40, 63.  SSA Hall also denied Mr. Berry training opportunities granted to white agents, denied Mr. Berry's request to attend primary supervisor relief ("PRS") training, and prohibited him and his wife, Alyson Berry, another FRA Special Agent and who is white, from traveling in the same car together.

SA Fancher made similarly insensitive comments, such as "the FBI . . . only cares about hiring minorities and females," and "minorities are only hired based off their background."  *Id.* at 44, 65.  In September 2020, SA Fancher, having learned that Mr. Berry was one of the kneeling agents at the BLM protests, became "enraged" and said, "Mr. Berry should have been fired."  *Id.* at 40.

---

[2] Mr. Berry did not allege that his transfer was retaliatory.

4

In March 2021, Special Agent Nicole Montgomery—at SSA Hall's behest—falsely reported Mr. Berry to the FBI's Inspection Subdivision ("INSD") for misusing travel funds. He received notice of the investigation in the same month.

In August and September 2021, Mr. Berry reported SSA Hall's "hate speech" to INSD. *Id.* at 46.

In June 2022, SSA Hall retired, and SA Fancher took over his supervisory responsibilities.[3]

In November 2022, SA Fancher asked FRA squad members to report their biggest accomplishments of the year. From this exercise, Mr. Berry learned he led the squad in arrests. In January 2023, despite SA Fancher's knowing this information, he instructed a new agent, in front of the entire squad, to direct his questions to two white agents. Mr. Berry characterizes this event as a "non-recognition of his workplace accomplishments." *Id.* at 57.

On January 7, 2023, Mr. Berry received a letter from the FBI's Office of Professional Responsibility ("OPR") proposing his dismissal based on INSD's finding that he had misused travel funds.[4]

---

[3] In June 2022, the FBI promoted SA Fancher to Supervisory Special Agent. We refer to him as SA Fancher throughout this order and judgment.

[4] Mr. Berry's amended complaint alleged that SA Montgomery's report was false. *See* App., Vol. I at 42, 63. After a full administrative investigation, however, INSD concluded, "[b]ased on a preponderance of the evidence," that the allegation of fraud was substantiated. App., Vol. II at 235; *see also* App., Vol. I at 196-97.

In May 2023, after an administrative hearing, an "OPR conduct board" suspended Mr. Berry for 60 days. *Id.* at 53, 66.

In July 2023, when Mr. Berry returned to the FRA, his "roles and responsibilities were diminished to shredding paper and filing paperwork." *Id.*

After an unsuccessful attempt to transfer to a different field office, Mr. Berry resigned from the FBI.

## 2. Exhaustion Facts

During summary judgment proceedings, the parties introduced the following additional facts relevant to the Government's exhaustion defense.

Between 2018 and 2022, Mr. Berry completed the FBI's No Fear Act training three times. This training informed him of the 45-day reporting requirement.

On January 11, 2023, Mr. Berry contacted an EEO counselor in the OEEOA.

On January 13, 2023, Mr. Berry told an EEO counselor that "he was subjected to discrimination on the bases of race, reprisal, and parental status when: from half of 2020 through half of 2022 he was subjected to racial comments, intimidated, threatened, treated different than co-workers, and held to a higher standard," and when, "on January 11, 2023, he became aware he was proposed for dismissal from his role at the FBI." *Id.* at 91.

On February 3, 2023, the EEO counselor sent Mr. Berry a Notice of Right to File a Discrimination Complaint.

On February 10, 2023, Mr. Berry filed his EEO complaint with the OEEOA. Mr. Berry did not amend his EEO complaint to include any of the alleged actions that

6

occurred after February 10, 2023.  After reviewing the complaint, the OEEOA

accepted 10 issues for investigation.

On October 4, 2023, the OEEOA issued its Report of Investigation detailing its

findings regarding Mr. Berry's claims of racial and marital status discrimination.

After Mr. Berry filed suit in federal court, the OEEOA dismissed Mr. Berry's

complaint of discrimination without issuing a decision on the merits.  *See* App.,

Vol. II at 198-99.

C. *Procedural Background*

**1.  Amended Complaint**

In January 2024, Mr. Berry brought this Title VII action in federal court.  He

later amended his complaint.  He alleged three claims.

First, he claimed discrimination based on race and marital status, alleging the

following adverse actions:

(1) "denial of the [sic] numerous training opportunities,"

(2) "denial of the ability to travel with [spouse] SA Berry in the same vehicle for work related purposes,"

(3) "being investigated for. . .fraud," and

(4) "delay in approving [his] PRS application . . . and ultimate denial of [his] request to partake in PRS duties."

App., Vol. I at 54-55.

Second, he claimed retaliation for taking a knee at the BLM protest and

reporting SSA Hall to INSD, alleging the following adverse actions:

7

(1) "the continuation of the Bureau's OPR investigation into the alleged
. . .fraud,"

(2) "removal of [his] job duties,"

(3) "denial of numerous training requests,"

(4) "delay of [his] PRS application and then refusal to allow [him] to take on
PRS duties," and

(5) "non-recognition of [his] workplace accomplishments. . .by SA Fancher."

*Id.* at 56-57.

Third, he based a hostile work environment claim on SSA Hall's and

SA Fancher's "comments," alleging that SSA Hall "subjected [him] to unwelcome

harassment on account of [his] race" by "saying BLM protestors should 'be killed,'"

telling people that he "was going to be a problem, because he was interracial, and

telling [him] that black people need to get over racism." *Id.* at 56.  Mr. Berry further

alleged that SSA "Hall['s] (and [SA] Fancher's) comments altered the terms and

conditions of [his] work environment" by making it clear both men "regarded him as

an interracial problem child who should 'be killed' on account of his opposition to

black men being killed in the streets." *Id.*[5]

---

[5] The four paragraphs in "Count II – Hostile Work Environment" alleged
(1) the elements of a hostile work environment claim (¶ 104); (2) that "Mr. Berry is
Black, a member of a protected class (¶ 105); (3) that SSA Hall harassed Mr. Berry
with racist comments (¶ 106); and (4) that SSA "Hall['s] (and [SA] Fancher's)
comments altered the terms and conditions of [his] work environment" (¶ 107).
App., Vol. I at 55-56.  Count II therefore attempted to allege a hostile work
environment claim based on alleged racist comments made by SSA Hall and SA
Fancher.

## 2. Motions

The Government moved for summary judgment. It argued that Mr. Berry failed to report the alleged conduct underlying his claims to an EEO counselor within 45 days of its occurrence and also failed to raise most of the alleged conduct in his EEO complaint. The Government attached the EEO counselor's Report of Counseling, Mr. Berry's EEO complaint, and the No Fear Act training materials.

In response, Mr. Berry argued he exhausted his claims or his failure to exhaust should be excused. He urged that his January 11, 2023 report to the EEO counselor exhausted his claims. He also contended his August and September 2021 reports to INSD about SSA Hall's comments exhausted his hostile work environment claim.

Mr. Berry also moved for additional discovery under Federal Rule of Civil Procedure Rule 56(d) on:

1. The FBI's application and interpretation of INSD's policies;

2. Whether his EEO counselor fulfilled her required counseling goals;

3. Whether FBI policy required his EEO counselor to ask follow-up questions during her initial interview with him;

4. Whether the FBI's "EEO complaint processing policies" allow the FBI to accept untimely EEO complaints; and

5. How the FBI defines a "Responsible Management Official."[6]

---

[6] This request appeared to stem from a reference to SA Montgomery in the OEEOA Report of Investigation and Mr. Berry's attempt to argue that she contributed to the alleged hostile work environment. *See* Aplt. Reply Br. at 20-21. The amended complaint contained allegations suggesting that SA Montgomery made statements similar to those of SSA Hall and SA Fancher, App., Vol. I at 44, but she was not mentioned in Count II, and, consistent with our analysis below, Mr. Berry

9

App., Vol. III at 2-6.

## 3. District Court Order

The district court denied Mr. Berry's Rule 56(d) motion, finding he failed to show additional discovery was necessary and failed to identify the specific or probable facts he sought to find. The court also concluded the subjects on which Mr. Berry sought discovery were irrelevant to rebutting the Government's exhaustion defense.

The district court then granted summary judgment to the Government. Because Mr. Berry failed to contact an EEO counselor within 45 days of almost all the acts underlying his claims, and also because his EEO complaint did not identify several of these acts, the court concluded that Mr. Berry failed to exhaust "all but one" of the acts. *Id.* at 157. It further held Mr. Berry could not excuse his failure to exhaust based on equitable tolling or waiver—determining that Mr. Berry had constructive notice of the 45-day reporting requirement and that the Government did not waive its exhaustion defense.

The district court said Mr. Berry exhausted SA Fancher's non-recognition of Mr. Berry's workplace accomplishments but held that this act was insufficient to establish a retaliation or hostile work environment claim. On retaliation, the court assumed Mr. Berry engaged in protected activities but said he failed "to explain how

---

did not timely report her statements to the EEO counselor or include them in the EEO complaint.

[SA] Fancher's alleged non-recognition [wa]s related or how it was materially adverse." *Id.* at 159. On the hostile work environment claim, the district court said that Mr. Berry's EEO complaint mentioned only SSA Hall. It also said that "Fancher's conduct listed in the EEO Complaint cannot be construed as ridicule, insult, or intimidation on any discriminatory basis," and that Mr. Berry "admitted" that SA Fancher "did not make any racist remarks." *Id.* at 162 (citation omitted).

## II. DISCUSSION

On appeal, Mr. Berry argues the district court abused its discretion in denying his Rule 56(d) motion for additional discovery and erred in granting summary judgment to the Government.

### A. *Rule 56(d) Motion*

#### 1. Standard of Review and Rule 56(d)

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer ruling on the summary judgment motion "or deny it," grant the non-movant time to take additional discovery, or "issue any other appropriate order."

"We review the denial of a Rule 56(d) motion for an abuse of discretion . . . ." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir 2021) (quotations omitted). We will reverse only if "the district court's decision to deny discovery exceed[ed] the bounds of the rationally available choices given the facts and the

11

applicable law in the case at hand." *FDIC v. Arciero*, 741 F.3d 1111, 1116
(10th Cir. 2013) (quotations omitted).

"In the Tenth Circuit, a non-movant requesting additional discovery under
Rule 56(d) 'must specify (1) the probable facts not available, (2) why those facts
cannot be presented currently, (3) what steps have been taken to obtain these facts,
and (4) how additional time will enable [the party] to obtain those facts and rebut the
motion for summary judgment.'" *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir.
2016) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)).
"We expect Rule 56(d) motions to be robust, and we have observed that [an]
affidavit's lack of specificity counsels against a finding that the district court abused
its discretion in denying a request for additional discovery under the rule." *Birch*,
812 F.3d at 1249-50 (quotations omitted).  We thus have affirmed the denial of
Rule 56(d) motions when non-movants fail to identify the specific "evidence they
would need to prevail on their claims." *Adams*, 30 F.4th at 969.

## 2. Analysis

On appeal, Mr. Berry argues the district court abused its discretion in denying
his Rule 56(d) motion because his "focused and legally relevant lines of inquiry"
went "to the core of the FBI's affirmative defense." Aplt. Br. at 15.  We disagree.

First, Mr. Berry failed to show additional discovery was necessary.  He filed a
detailed response to the Government's summary judgment motion, attaching over
300 pages of exhibits to support his argument that he timely exhausted his claims.
He did not assert additional facts were needed to establish a genuine issue of material

fact.  Indeed, he conceded that his response "sufficiently create[d] issues of fact necessary to survive Summary Judgment."  App., Vol. III at 1.

Second, Mr. Berry failed to identify the specific and probable facts that additional discovery would yield.  Instead, he sought information on the broad subjects listed above, which did not show what evidence Mr. Berry was seeking, the probability it existed, or how it would rebut the Government's exhaustion defense.

Third, none of Mr. Berry's categories for discovery sought information that would rebut the Government's exhaustion defense or contest that Mr. Berry (1) did not contact an EEO counselor until January 11, 2023, (2) failed to include several of the alleged discrete acts in his EEO complaint, and (3) completed No Fear Act training informing him of the 45-day reporting requirement.

In his opening brief, Mr. Berry urges additional discovery was necessary to determine whether his reports to INSD fulfilled the reporting requirement and whether the Government waived its exhaustion defense.  *See* Aplt. Br. at 15-16.  But he still fails to identify the specific and probable facts that additional discovery on these questions would uncover.  Further, as our ensuing discussion shows, the undisputed facts were sufficient for the district court to resolve these questions.[7]

The district court did not abuse its discretion in denying his Rule 56(d) motion.

---

[7] It was undisputed that (1) Mr. Berry attended the No Fear Act training three times before his first EEO contact, and the training informed him of the EEO 45-day reporting requirement; (2) Mr. Berry reported SSA Hall's offensive comments to the FBI's INSD in August and September 2021 and that INSD and OEEOA were separate departments; and (3) the OEEOA accepted 10 matters from Mr. Berry's EEO complaint for investigation.

B. *Summary Judgment*

"We review summary judgment determinations de novo, applying the same standard as the district court." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). "We view facts in the light most favorable to [Mr. Berry] as the non-moving party and draw all reasonable inferences in his favor." *Id.* (quotations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Cir. P. 56(a). We review de novo "whether a plaintiff has exhausted her administrative remedies." *Dossa*, 529 F.3d at 913.

On appeal, Mr. Berry argues the district court erred in granting the Government summary judgment because (1) he either exhausted his administrative remedies or his failure to exhaust should have been excused, Aplt. Br. at 18-30, and (2) the alleged conduct was sufficiently adverse to state a claim for discrimination, retaliation, or hostile work environment, *id.* at 30-34.

**1. Exhaustion**

Because Mr. Berry did not contact an EEO counselor until January 11, 2023, acts underlying the alleged claims that occurred before November 27, 2022, were not exhausted. *See* 29 C.F.R. § 1614.105(a)(1). The non-recognition event, which occurred in January 2023, was exhausted.[8]

---

[8] One other potentially exhausted matter was the allegation in the EEO complaint and amended complaint that SA Fancher did not discipline SA Montgomery when he learned on January 24, 2023, that she included a source's name in a report. But Mr. Berry did not present an adequately briefed argument on

### a. Discrimination

Mr. Berry failed to exhaust the alleged discrete acts that SSA Hall prohibited him and his spouse SA Berry from traveling in the same vehicle in 2020, denied him the opportunity to attend training opportunities in 2021, and denied his PRS application in 2021. He failed to report these acts to an EEO counselor until January 11, 2023, well outside the 45-day reporting period.[9]

Mr. Berry also alleged that he learned in March 2021 about INSD's investigation into his alleged misuse of travel funds, which was one of his alleged adverse actions for his discrimination claim. Although March 2021 fell well before the 45 days leading to his initial EEO counselor contact, Mr. Berry argues he exhausted this alleged adverse action based on the January 7, 2023 OPR letter recommending his dismissal. *See* Aplt. Br. at 28. Despite not pleading that the letter was itself an adverse action, *see* App., Vol. I at 54-55, Mr. Berry contends he exhausted this alleged adverse action because the letter alerted him to the "discriminatory consequences" of the INSD investigation, Aplt. Br. at 28. He

---

this issue in his opposition to the summary judgment motion and has not specifically addressed it on appeal, so it is waived. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020). He otherwise has not explained how it is germane to his claims.

[9] In his EEO complaint, Mr. Berry failed to mention the denial of training opportunities, the denial of his PRS application, and INSD's continued investigation. This failure is an additional and separate ground to hold these discrete acts are unexhausted. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) ("A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." (quotations omitted)).

presented this argument below in response to the Government's summary judgment motion, *see* App., Vol. I at 129-30, 144-45, but the district court did not address it. Rather than attempt to address it here, we remand to the district court to do so. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) ("Where an issue has not been ruled on by the court below, we generally favor remand for the district court to examine the issue.").[10]

### b. Retaliation

As explained above, the denials of Mr. Berry's training requests and PRS application were not timely reported to an EEO counselor, and the removal of Mr. Berry's job duties in July 2023 was not in his EEO complaint.

Mr. Berry argues that by raising the January 7, 2023 letter's proposed termination as a retaliatory act during his January 11, 2023 EEO counselor contact, he did not need to amend his EEO complaint to include removal of his job duties because they would "clearly fall within the scope of the administrative investigation." Aplt. Br. at 29. But our case law holds otherwise—he must allege the discrete event. *See Lincoln*, 900 at 1181 ("Thus, where discrete incidents of discrimination occur

---

[10] Although Mr. Berry also suggested in district court that the January 7, 2023 letter exhausted the alleged INSD investigation adverse action listed in his amended complaint for his retaliation claim, *see* App., Vol. I at 129-30, he has not adequately argued this on appeal.

after an employee files an initial EEOC charge, the employee must file an additional

or amended charge with the EEOC to satisfy the exhaustion requirement as to

discrete incidents occurring after the initial charge.").[11]

That leaves the remaining alleged retaliatory action—SA Fancher's

non-recognition of Mr. Berry's workplace accomplishments, which occurred in

January 2023, was reported to an EEO counselor within 45-days, and was in

Mr. Berry's EEO complaint.  We address it below in our merits discussion of the

retaliation claim.

c.  *Hostile work environment*

Mr. Berry's hostile work environment claim also was unexhausted.  He needed

to report only one act from the 45-day reporting period to exhaust his claim, but he

failed to timely report an act that would qualify.  *See Tademy*, 614 F.3d at 1139.

First, Mr. Berry failed to timely report SSA Hall's comments, which occurred

between June 2020 and June 2022.  Relying on the test used in *Johnson v. Glickman*,

155 F. Supp. 2d 1240, 1247 (D. Kan. 2001), he argues that he exhausted his claim by

reporting SSA Hall's comments to INSD in August and September 2021.  *See* Aplt.

---

[11] *See also Martinez*, 347 F.3d at 1210-11 (stating this court's exhaustion rules are "equally applicable . . . to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint"); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1171 (10th Cir. 2020) (explaining the scope of an administrative investigation that can reasonably be expected to follow the charge "is determined by the allegations in the [EEO] Charge itself" (quotations omitted)).

Reply Br. at 12-17; *see also* Oral Arg. at 6:56-7:09.[12]  But we have never adopted this

test, and it would not apply even if we did.[13]

Second, SA Fancher's comments alleged in Mr. Berry's federal court amended

complaint were not timely reported to an EEO counselor and/or were not alleged in

Mr. Berry's EEO complaint and were therefore unexhausted.[14]

Third, although Mr. Berry exhausted SA Fancher's alleged non-recognition of

his workplace accomplishments, this event did not revive Mr. Berry's otherwise

unexhausted hostile work environment claim.  The Government argues persuasively

---

[12] In *Johnson v. Glickman*, the district court held that "in order to sufficiently initiate contact" with an EEO counselor for purposes of Title VII exhaustion, "the employee must (1) contact an agency official logically connected with the EEO process, even if the official is not an EEO counselor; (2) demonstrate an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination."  155 F. Supp. 2d at 1247 (quotations omitted).

[13] The record does not support that INSD was logically connected to the OEEOA.  As the district court found, INSD and the OEEOA are separate FBI offices: "While both receive complaints and conduct investigations regarding discrimination and retaliation, each has distinct purposes and processes."  App., Vol. III at 138.  As the FBI's Harassment Policy confirms, victims of discrimination and retaliation may report to INSD or the OEEOA, but "[a]n employee who wishes to file a formal EEO complaint about offensive conduct must contact an EEO counselor within 45 days of the occurrence or knowledge of the offensive conduct."  *Id.* at 63.
    Mr. Berry quotes from INSD's Internal Affair Policy handbook § 4.1.4 that INSD "must collaborate" with "the … Office of Equal Employment Opportunity Affairs (OEEOA)."  Aplt. Reply Br. at 15.  But this policy was not in effect when Mr. Berry reported SSA Hall to INSD.

[14] Mr. Berry argues "issues of fact remain as to whether" SA Fancher's actions were part of the same hostile work environment created by SSA Hall.  Aplt. Br. at 25. But other than the non-recognition event, he did not allege actions by SA Fancher that fell within the 45-day reporting period.

18

that "[n]o reasonable reading of [Mr.] Berry's hostile work environment claim includes" the non-recognition event because the amended complaint based the claim on SSA Hall's and SA Fancher's "comments." Aplee. Br. at 40. Mr. Berry's argument fails for the further reason that the non-recognition event was "qualitatively different," *Tademy*, 614 F.3d 1132, and "of a different character," *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denv.*, 397 F.3d 1300, 1310 (10th Cir. 2005), from SSA Hall's and SA Fancher's comments and therefore cannot be part of the alleged hostile work environment claim.[15]

### d. Mr. Berry's remaining arguments

In addition to Mr. Berry's arguments that we have addressed, his remaining arguments lack merit.

### i. Compliance with exhaustion requirements

Mr. Berry asserts that his January 11 report to the EEO counselor was sufficient to exhaust because it "provided the FBI with information it needed to investigate and attempt to resolve his claims." Aplt. Br. at 21 (capitalization

---

[15] In recognizing that Mr. Berry timely alleged the non-recognition event to the EEO counselor, the district court said "this allegation does not . . . demonstrate a hostile work environment." App., Vol. III at 157. For the reasons stated above, the district court did not need to address this matter. Neither do we, though we agree that SA Fancher's one-time non-recognition of Mr. Berry's workplace accomplishments was not pervasive or severe, nor did it unreasonably interfere with Mr. Berry's work performance—the requirements for a hostile work environment claim. *See Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249, 1250 (10th Cir. 2024).

19

omitted).  But this position would effectively nullify the 45-day reporting requirement and our precedent requiring that Title VII exhaustion requirements be enforced when "properly rais[ed]."  *Hickey*, 969 F.3d at 1118.

Mr. Berry also argues he exhausted by complying with 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.106(c).  Section 2000e-16(c) permits a Title VII claimant to "file a civil action" if the employee's agency fails to render a final decision within "one hundred and eighty days from the filing of the initial charge with the department."  42 U.S.C. § 2000e-16(c).  Section 1614.106(c) requires an EEO complaint to be "sufficiently precise" to identify the "aggrieved individual," "the agency," and "the action(s) or practices(s) that form the basis of the complaint." C.F.R. § 1614.106(c).  Neither provision bears on whether Mr. Berry fulfilled his obligation to report the discrete acts underlying his claims to an EEO counselor within 45 days.

### ii.  Equitable tolling and waiver

Mr. Berry next argues his failure to exhaust should be excused based on equitable tolling or waiver.  Aplt. Br. at 18-19, 27-28.  Because Title VII's exhaustion requirements are not jurisdictional, they are subject to waiver, estoppel, and equitable tolling.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Hickey*, 969 F.3d at 1118.

### 1)  Equitable tolling

Mr. Berry argues his failure to exhaust should be equitably tolled because the Government failed to show Mr. Berry had actual or constructive notice of the 45-day

20

reporting requirement. Aplt. Br. at 18-19. The record shows otherwise, and "[a]s with any party claiming the benefit of equitable tolling of a limitations period, [Mr. Berry] bore the burden of proving justifiable circumstances." *Olson v. Fed. Mine Safety & Health Rev. Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004).

Mr. Berry had notice. The slides from the No Fear Act training, which Mr. Berry completed three times before January 2023, stated that an "aggrieved individual must contact the FBI's OEEOA within **forty-five (45) days** of the allegedly discriminatory action(s)." App., Vol. I at 105. And the district court found that the OEEOA's and EEO counselors' contact information was "readily available to all employees online." App., Vol. III at 164. Further, during Mr. Berry's time at the FRA, the break room contained a "bright blue . . . poster" outlining an employee's EEO reporting obligations. *Id.* at 70, 72; *see Hickey*, 969 F.3d at 1123 (holding an employee had constructive notice of the 45-day reporting requirement because her employer "displayed EEO posters visibly on the walls" (quotations omitted)).

2) Waiver

Mr. Berry argues the Government waived its exhaustion defense by accepting his EEO complaint and investigating his claims despite their untimeliness. Aplt. Br. at 27-28. We have not squarely addressed this issue, but the eight circuits that have do not support Mr. Berry's position.

Other circuits have held that waiver occurs "when an agency decides the merits of a complaint, without addressing the question of timeliness," *Ester v. Principi*, 250 F.3d 1068, 1071-72 (7th Cir. 2001); *Bowden v. United States*, 106 F.3d

21

433, 438 (D.C. Cir. 1997), when the agency "make[s] a specific finding that the claimant's submission was timely," *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992); *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1252-53 (11th Cir. 2012), or both, *see Shea v. Tisch*, 870 F.2d 786, 788 (1st Cir. 1989); *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 45 (1st Cir. 2005); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985), *Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995); *Bruce v. U.S. Dep't of Just.*, 314 F.3d 71, 74 (2d Cir. 2002) (citing *Rowe*, 369 F.3d at 191, and *Ester*, 250 F.3d at 1068, approvingly); *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004); *Lord v. Holder*, 568 F. App'x 435, 439 (6th Cir. 2014) (unpublished).

All eight circuits hold that a federal agency does not waive its exhaustion defense by accepting and investigating an EEO complaint. *See, e.g., Horton*, 369 F.3d at 911; *Ramirez*, 686 F.3d at 1253 n.11; *Mercado*, 410 F.3d at 45.

We need not decide whether waiver of the exhaustion defense occurs when a federal agency's EEO office decides a complaint on the merits or decides a report was timely. Neither happened here. We do hold, consistent with our sibling circuits, that an agency does not waive its exhaustion defense merely by accepting and investigating untimely claims. "Indeed, were we to do otherwise we would vitiate any incentive for [government] agencies to investigate and voluntarily remedy instances of discrimination, lest the agencies risk forfeiting a valid defense to a *potential* suit." *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (quotations omitted). The Government therefore did not waive its exhaustion defense here.

22

* * * *

In sum, apart from the issue we are remanding to the district court, Mr. Berry failed to show he exhausted all but one of the discrete acts underlying his claims and did not show his failure to exhaust should be excused. We turn next to the one exhausted discrete act—the non-recognition event—alleged as an adverse action underlying Mr. Berry's retaliation claim.

## 2. Retaliation Based on the Non-Recognition Event

Mr. Berry's one exhausted discrete action—SA Fancher's non-recognition of Mr. Berry's workplace accomplishments—does not support a retaliation claim.

Title VII forbids employers from retaliating against an employee because he "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of Title VII retaliation, the plaintiff must show (1) protected opposition to discrimination, (2) an adverse action that a reasonable employee would have found material, and (3) a causal connection between the protected activity and the materially adverse action. *Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019) (quotations omitted).

Protected opposition occurs "when an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 926 (10th Cir. 2016) (quotations omitted).

23

To prove an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted). "The action must be materially adverse 'to separate significant from trivial harms,' such as 'petty slights, minor annoyances, and simple lack of good manners . . . .'" *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1225 (10th Cir. 2017) (quoting *Burlington*, 548 U.S. at 68).[16]

To prove causation, the "plaintiff must show that the individual who took adverse action against [him] knew of the employee's protected activity." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (quoting *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)). The plaintiff must also present "evidence of

---

[16] Mr. Berry argues the district court applied the wrong legal standard in determining whether SA Fancher's non-recognition was an adverse action. Aplt. Br. at 30-32. He asserts that under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a Title VII plaintiff "'does not have to show . . . that the harm incurred was significant[] [o]r serious, or substantial.' Instead, it is enough that the plaintiff experienced 'some disadvantageous change in an employment term or condition.'" Aplt. Br. at 31 (quoting *Muldrow*, 601 U.S. at 354). But *Muldrow* concerned Title VII discrimination claims and does not apply to retaliation claims. *See Muldrow*, 601 U.S. at 348 (finding the "materially adverse" standard was adopted "for reasons peculiar to the retaliation context" that do not apply to Title VII's anti-discrimination provisions); *see Plump v. Gov't Emps. Ins. Co.*, 161 F.4th 1222, 1229 n.10 (10th Cir 2025) ("[T]his court has held *Muldrow* did not alter the standard for reviewing Title VII retaliation claims." (citing *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025))).

circumstances that justify an inference of retaliatory motive." *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).

Mr. Berry alleged that SA Fancher's non-recognition of his workplace accomplishments was retaliation for taking a knee at the BLM protest and reporting SSA Hall to INSD. The district court assumed that both were protected activities and focused on the second and third retaliation claim elements. We conclude that Mr. Berry's claim fails under either of those elements.

Mr. Berry failed to show a materially adverse action because he could not establish that SA Fancher's non-recognition of his workplace accomplishments would deter a similarly situated person from engaging in the protected activity. Although Mr. Berry claims the "denial of recognition" marked "a clear disadvantage in status and professional esteem," he cites no cases finding similar actions materially adverse. Aplt. Br. at 33. We have held that arguably more harmful instances of non-recognition did not rise to such a level. *See Stover v. Martinez*, 382 F.3d 1064, 1072-73 (10th Cir. 2004) (concluding an agency's selection of a less qualified employee rather than the plaintiff for a special assignment was not an adverse action).

On causation, the district court found Mr. Berry "fail[ed] to explain how Fancher's alleged non-recognition [was] related to" Mr. Berry's alleged protected

activities. App., Vol. III at 159. Mr. Berry does not challenge this conclusion on appeal.[17]

For these reasons, Mr. Berry's retaliation claim based on the non-recognition event fails.

### III. CONCLUSION

We remand for the district court to consider Mr. Berry's argument that his report of the January 7, 2023 letter to the EEO counselor exhausted his discrimination claim based on the INSD investigation of him for travel fraud. We otherwise affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[17] Mr. Berry argues "at a minimum [his] retaliation claim predicated on the FBI's attempt to fire him was timely" because "he initiated contact with an EEO counselor within 45 days of learning in January 2023, that the FBI was seeking to fire him." Aplt. Br. at 22. But Mr. Berry did not plead a retaliation claim based on the January 7, 2023 letter in his amended complaint.